1  SAIED KASHANI SBN 144805
2  800 W 1st Street Suite 400
   Los Angeles, CA  90012
3  tel. (213) 625 4320
   saiedkashani@gmail.com
4
5  Attorney for Plaintiffs
   GREGORY HANNLEY, RICK DARNELL,
6  ALEX DRAGHICI, FARAH BARGHI
   and PAUL EDALAT
7
8           IN THE UNITED STATES DISTRICT COURT

9        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10
   GREGORY HANNLEY, RICK DARNELL,  ) **CASE NO:  2:21-cv-02043-JLS-DFM**
11 ALEX DRAGHICI, VIVERA           )
   PHARMACEUTICALS INC., FARAH     ) **FIRST AMENDED COMPLAINT:**
12 BARGHI, AND PAUL EDALAT         )
                                   ) **(1) COPYRIGHT INFRINGEMENT**
13                                 ) **(2) DEFAMATION**
   Plaintiffs,                     ) **(3) SLANDER**
14                                 ) **(4) LIBEL**
   v.                              ) **(5) UNFAIR COMPETITION**
15                                 ) **(6) INTENTIONAL INTERFERENCE**
   HOWARD MANN; BRUCE E. CAHILL;   ) **    WITH PROSPECTIVE ECONOMIC**
16 ROBERT CHARLES BLAINE aka       ) **    ADVANTAGE**
17 ROBERT CHARLES ALLEN-BLAINE;    )
   FEDERICO CABO; BLAINE           ) **(7) INTENTIONAL INFLICTION OF**
18 LABORATORIES INC. aka BLAINE    ) **    EMOTIONAL DISTRESS**
19 LABS; ALTERNATE HEALTH CORP.;   ) **(8) CIVIL EXTORTION**
   ALTERNATE HEALTH USA INC.; DOES )
20 1 THROUGH 20, INCLUSIVE,        ) **Civil Conspiracy**
21                                 ) **Injunction requested**
   Defendants.                     ) **Jury Demand**
22 ──────────────────────────────  )
23                                 )

24

25 ────────────────────────────

26

27

28

COME NOW, plaintiffs Gregory Hannley, Rick Darnell, Alex Draghici, Vivera Pharmaceuticals Inc., Farah Barghi, and Paul Edalat and by and for their complaint do say and allege as follows:

### JURISDICTION AND VENUE

1.    This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act of the United States, 17 U.S.C. § 101, *et seq.*

2.    This Court has original subject-matter jurisdiction over the federal Copyright claims in this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1338(b) because they arise under the laws of the United States.  This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, as those claims form part of the same case or controversy.

3.    This Court has personal jurisdiction over Defendants because, among other things, Defendants reside in and/or are doing business in the State of California and in this judicial District, and the alleged acts of infringement complained of herein have occurred and/or are occurring in the State of California and in this judicial District.

4.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because the infringement occurred in this District, and each of the Defendants either reside in this District or has substantial and continuous ties to this District.  Furthermore, substantial unlawful acts and events asserted herein took place within this District, and significant

witnesses, documents and evidence are located within this
District.

**THE PARTIES**

5.   Plaintiff Gregory Hannley is an individual residing in
Los Angeles County and a member of the advisory board of Vivera
Pharmaceuticals, Inc. ("Vivera").  Mr. Hannley provides treatment
to those suffering from addiction.

6.   Plaintiff Rick Darnell is an individual residing in
Orange County, California and a member of Vivera's advisory
board.  Mr. Darnell, known to his friends as "Coach" Darnell, is
a retired professional basketball player who coaches basketball
underprivileged children.

7.   Plaintiff Alex Draghici is an individual residing in
Los Angeles County and a business associate of Paul Edalat.

8.   Plaintiff Vivera Pharmaceuticals, Inc. ("Vivera") is a
corporation organized and existing under the laws of the State of
Delaware and authorized to do business in California.  At all
times relevant to this Complaint, Vivera's principal place of
business was located at 4533 MacArthur Boulevard, #5049, Newport
Beach, California 92660.

9.   Plaintiff Paul Edalat ("Edalat") is an individual
residing in Orange County, California.  Edalat is the Chairman
and CEO of Vivera.

10.  Plaintiff Farah Barghi ("Barghi") is an individual
residing in Orange County, California, and is Edalat's sister.

11.   Defendant Bruce Edward Cahill ("Cahill") is a resident and/or citizen of California, with a residence in Laguna Beach, California.

12.   Defendant Howard Mann ("Mann") is a resident of California, with a residence in Santa Monica, California.   Mann is the current CEO of Alternate Health Corp. and its wholly owned subsidiary Alternate Health, USA.

13.   Defendant Robert Charles Blaine *aka* Robert Charles Allen-Blaine ("Blaine") is a resident and/or citizen of California, with a residence in Los Angeles County, California.   Blaine is the current CEO of Blaine Holdings and Blaine Laboratories.   Blaine is also the President and Chief Medical Officer of Alternate Health Corp. and has held those positions since on or about 2019.

14.   Defendant Blaine Laboratories is an entity of unknown type with its principal place of business in Los Angeles County, California.   Blaine Laboratories is a wholly-owned subsidiary of Alternate Health Corp.

15.   Defendant Alternate Health Corp. is a Canadian corporation with its principal place of business in Toronto, Canada.   Defendant Alternate Health USA Inc. is a Delaware corporation with its principal place of business in Toronto, Canada.   Alternate Health Corp. and Alternate Health USA Inc. have combined and overlapping management and operations and are essentially alter egos of each other.   On information and belief, both companies are now defunct and have no operations, although both continue to claim to have operations in order to fool their

public shareholders.  The two entities will sometimes be referred to herein collectively as "Alternate Health" or "AH".  At relevant times AH was a publicly listed company in Canada, but has since been delisted and, on information and belief, is under investigation by the Canadian securities authorities.

16.   Based on information and belief, Defendant Federico Cabo ("Cabo") is a resident of Los Angeles County California. Cabo is the owner of Oltecate Enterprises and is also a Board member of Alternate Health Corp.

17.   The true names and capacities of Defendants DOES 1 through 20 are presently unknown to Plaintiffs, who therefore sues them by such fictitious names.  Plaintiffs are informed and believe that each of the fictitiously name defendants are responsible in some capacity for the matters herein alleged.  Plaintiffs will amend this Complaint to state the true names and capacities of DOES 1 through 20 when they are ascertained.

18.   At all times mentioned herein, each of the Defendants was the agent, employee, partner, principal, representative, alter ego, and / or affiliate of each of the remaining Defendants and, was at all times herein mentioned, acting with the course and scope of such relationship.  Moreover, at all times herein mentioned, each of the Defendants did confirm, conspire to, consent to, affirm, direct, authorize, acknowledge and ratify the acts of each and every of the Defendants herein as to each of the acts hereinafter alleged.

19.   Attorneys Keith Greer and John Markham are hereby
identified as witnesses with percipient knowledge of the events
subject of this complaint.

**FACTUAL ALLEGATIONS**

A.   **Prior contacts between the parties**

1.   **Cahill**

20.   Olivia Karpinski is employed by plaintiff Vivera
Pharmaceuticals.   Olivia was previously employed by a company
called Pharma Pak where Bruce Cahill was CEO.   In or about 2017,
Olivia accused Cahill of sexually harassing her and other
misconduct.   A jury eventually awarded Olivia money damages
against Cahill.   In that case Cahill was represented by the John
Markham of the lawfirm of Markham & Reade.   Cahill retaliated by
hiring a public relations firm to destroy Olivia's reputation.
Cahill had the PR firm secretly "plant" a false story about
Olivia in Olivia's hometown newspaper.   The story falsely claimed
Olivia had retracted her claims of sexual harassment.   The
episode illustrates Cahill's pattern of planting defamatory
statements while (attempting) to hide his own hand and refusal to
publicly acknowledge he was the source of the statement.   Cahill
repeated this pattern as alleged in this complaint.   Olivia
Karpinski then sued Cahill for defamation (the "Cahill Defamation
Case"), which suit is pending.

21.   Cahill and Paul Edalat were co-members of a business
venture that purchased a building in Nevada.   Cahill caused the
building to be sold with informing Edalat and tried to retain

5

Edalat's share of the proceeds.  Edalat sued Cahill in Nevada for his share.  This lawsuit (the "Sentus Case") is pending.

22.  In the course of litigation, Edalat discovered that in 2015, Cahill had lied on a successful application for a $5 million bank loan from First Foundation Bank.  Among other false statements, Cahill attested on the application that he was then receiving approximately $600,000 in yearly salary from Pharma Pak and from Sentar Pharmaceuticals, another company in which Edalat's sister Farah Barghi had an interest.  Edalat knew for a fact that Cahill was not, in fact, receiving any salary at all, and Cahill's representations in the application were false and fraudulent.  Cahill himself had signed an attestation that he did not take and would not take any salary at all from Pharma Pak, and Sentar certainly never paid Cahill anything.  Edalat informed the bank and authorities.  In this as in all such reports, unlike defendants who cower in (perceived) anonymity, Edalat disclosed his name and interest.

23.  As a result of the above, on information and belief Cahill became enraged and decided to seek vengeance against Edalat and his whole family and anyone associated with Edalat.  Cahill also hoped to force Edalat to settle the Sentus litigation on terms favorable to Cahill, and deter Edalat from working with the authorities regarding the fraudulent loan application.

24.  Paul Edalat had a brother who died of cancer.  In the Cahill litigation, Cahill's lawyer Markham displayed (off-camera) a photograph of Paul's deceased brother during a proceeding, in order to unnerve and upset Paul.  The information about Paul's

brother came from Cahill.  Also during the proceeding, Cahill
went out of his way to announce that Paul is originally from
Iran, in order to play on what Cahill perceives to be anti-
Iranian sympathies.  These same "Cahill Tactics" figured in the
subsequent misconduct (see below).

        **2.   Howard Mann and Alternate Health Corp.**

    25.   In 2017, AH, on the one hand, and Edalat, Sentar, and
APS entered into certain agreements with AH.  Briefly, Edalat et
al. assigned to AH rights in certain technology.  In return AH
issued stock in AH to Edalat, Sentar, Barghi and others.  AH also
agreed to pay royalties on products sold that utilized the
technology.  The stock was to be made publicly tradeable by July
2017, so that plaintiffs could sell their stock in the public
market and in effect get paid for what they gave AH.

    26.   AH announced the technology deal with plaintiffs
publicly and used the announcement to sell some CAD$ 7 million in
stock to investors.  After the stock was sold, AH never exploited
the technology or sold any products whatsoever based on the
technology.  AH also never paid any royalties or even provided
reports as mandated by the contract.  Evidently AH's sole purpose
in entering into the contracts was to make a public announcement
and sell stock.

    27.   After the announcement, Howard Mann started secretly
"dumping" stock in AH.  Mann had placed millions of shares of AH
in the name of his mother, Mary Mann.  Mann then instructed his
Canadian broker, Gordon Malic, to start selling Mary Mann's
stock.  Howard Mann did not make any public disclosure of this

sale by an insider or an insider's close relative.  Instead, while he was selling, Mann issued press releases touting AH's prospects and business.

28.  After July 2017, AH and Mann in particular reneged on their agreements with plaintiffs.  AH and Mann refused to remove the restrictive legend on plaintiffs' stock so the stock could be sold.  As a result plaintiffs received nothing on their AH stock. Mann admitted that in effect he had taken advantage of Paul and that Paul did not know that he, Mann, had to authorize removing the legend from his stock but Mann would never do so.

29.  When Edalat et al. complained, AH sued.  Specifically, AH hired John Markham -- Cahill's lawyer -- to sue Edalat, and then Barghi and Karpinski personally, to get out of paying. Edalat countersued to recover the compensation owed to him.  This lawsuit (the "Alternate Health Lawsuit") is pending.

30.  AH kept making announcements that, in retrospect, appeared designed primarily to drive up or keep up its stock price.  In the meantime the company's various announced lines of business went nowhere, or perhaps were never pursued at all.

31.  AH stock drifted down until it became a pennystock.  In 2020 the stock exchange in Canada suspended trading in AH stock.

32.  In 2020, Edalat caused to be prepared a detailed report on AH's misconduct including Mann's secret sales of stock held in his mother's name.  Edalat sent the report (with attribution -- not anonymously like defendants) to the authorities in Canada. As a result of the above, on information and belief Howard Mann became enraged with Edalat and decided to take vengeance against

him and to force Edalat to settle the AH litigation on terms favorable to Mann.

32A. In the course of the litigation with AH, AH came to learn that Paul Edalat had patents issued in Australia and Canada.  The Canadian patent involved the same technology licensed to AH.  The Canadian patent is not common knowledge but it was well known to AH.   The Canadian patent figures in defendants' misconduct as described below.

### 3.   Robert C. Blaine and Blaine Laboratories

33.  Robert C. Blaine is a medical doctor licensed in California.  Blaine owned a company called Blaine Laboratories. In or about September of 2018, Blaine Laboratories and Vivera entered into a business arrangement through which certain medical products including gel pads for scar treatment were sold successfully.  The operation accumulated a profit of some $2 million in a short period of time.

34.  Blaine Laboratories does considerable shipping.  The company always has on hand shipping materials including manila envelopes, sealing tape and professional tape dispensers/cutters, color printers and postage stamps.

35.  During the time of the Vivera/Blaine arrangement, certain employees of Vivera including Farah Barghi and Luis Navarro were, with the agreement of Blaine, placed on the payroll of Blaine Laboratories and paid through Blaine's payroll processing system.  Each such employee had to fill out paperwork to get on the payroll system including home address, etc.  As a

result, Blaine came to know the *home addresses* of certain individuals including Farah Barghi and Luis Navarro.

36.  Blaine came to resent the arrangement with Vivera and tried to cancel it so that he could retain all the profits for himself.  Litigation ensued between Vivera, Edalat et al. on the one hand and Blaine, Blaine Labs, et al on the other (the "Blaine Litigation").  The approximately $2 million in profits was deposited into the court.  As a result, in a very real sense the Blaine Litigation is over $2 million or more.

37.  In July 2019, AH acquired Blaine Laboratories and Blaine became a member of AH's Board of Directors.  AH made a public announcement that the acquisition had taken place.  AH never rescinded this announcement, or rescinded the announcement that Blaine had become a director of AH.

38.  In September 2019, Howard Mann attested under oath that for some months prior, he (Mann), AH, Blaine Labs and its principal Dr. Blaine, Federico Cabo and Bruce Cahill have "a common interest privilege" and had entered into a "joint defense" agreement and that they "share litigation strategies" against Edalat.  In other words, all of defendants agreed they had a united front against Edalat.

39.  Edalat discovered that Blaine had paid large amounts of money to settle claims of sexual harassment by one or more female employees.  In 2020 Blaine was sued by another female employee for sexual harassment.  The suit alleged that Blaine used the secret room (called the "Secret Sex Room or SSR") behind his office for improper activities with female employees.  Edalat

challenged these settlements and Blaine's conduct.  Again, and unlike defendants, Edalat acted with attribution, not anonymously.

40.  On information and belief, Blaine decided he also would seek vengeance against Edalat.

### 4.  Federico Cabo

41.  At relevant times Federico Cabo was and is a director of Alternate Health and a confidant of Howard Mann.  In or about 2017 Cabo entered into a business arrangement with Paul Edalat under which Cabo undertook to market certain products in Mexico.

42.  Edalat came to learn that Cabo had paid a bribe or other consideration to an official in Mexico to secure business, a violation of the Foreign Corrupt Practices Act (FCPA). Litigation ensued between Cabo and Edalat (the "Cabo Case"). That litigation is pending.

43.  On information and belief, Cabo decided he would help Mann and the other defendants destroy Edalat, his family and their associates.

44.  Based on the foregoing, each of Cahill, Mann, Blaine and Cabo had motive to wish harm to Paul Edalat, his family, associates and business.  On information and belief, defendants agreed to set up a website and otherwise defame, harass and intimidate plaintiffs in order to force settlements of litigation on terms favorable to defendants, or otherwise to pressure plaintiffs.  Each of defendants was aware of the campaign and agreed on it (conspiracy).  Each of defendants contributed to the campaign in one or more ways.

B.   **Defendants' Campaign of Terror and Libel**

45.   On or about May 2, 2019 a letter was mailed to Paul Edalat's business associate defendant Greg Hannley with a sender's address of 12 Sable Sands, Newport Coast, CA 92657.   On information and belief, and especially as the language matches known statements of Blaine, defendant Blaine sent this letter. The unsigned letter stated in part:

> *We are Con Watcher!*
>
> *We discover people who are being scammed and we offer information about the scammer.*
>
> **Paul Edalat** is a con man who lives in Orange County, specifically the gaited-community of Newport Coast.
> . . .
> **Paul Edalat** has 42 recorded law suits.. . . For the past dozen or so law suits as is noted from the public record, Paul uses Oren Bitan as the attacking attorney and as his defending attorney.
>
> **Paul** preys upon older male business owners (typically 55-75 years old) who have the following common qualities: <u>all are passionately devoted and dedicated to causes greater than themselves; all are kind; all are trusting; all have a cause that Paul pretends to share; all are wealthy and able to invest millions</u>.
> . . .
> The Scam:  Paul presents initially to the potential and unsuspecting victim in one of several Rolls Royces or one of several Ferraris or in one of several Lamborghinis. . .
>
> We identified you from Paul's Instagram and from the most recent Vivera web site.. . .

46.  It should be noted that at the time, Oren Bitan, the only attorney mentioned by name in the letter, represented Paul Edalat in litigation against defendant Blaine and Blaine Labs. The letter did not mention any of the many other attorneys, equally available "from public record", who also represented Paul Edalat.

47.  The letter also used the interesting phrasing "Paul *presents* initially".  This phrasing is used by all in the medical profession to describe the meeting with the patient, i.e. "the patient *presents* with the following symptoms..."

48.  At the time Gregory Hannley was a business associate of Paul Edalat and a member of Vivera's advisory board.  The letter was designed to interfere and did interfere with their business relationship.

49.  On or about May 24, 2019, two men Edalat did not know approached Edalat while he was eating at a restaurant with two business partners.  One of the unknown men looked directly at Edalat and asked him if he "was Paul."  One of the men then demanded that Paul "step outside."  Edalat refused to go outside with the unknown men and told the men if they had something to say to "say it at the table."  One of the men then said: "You need to drop the lawsuit so there won't be a problem."  Edalat responded: "What lawsuit?"  The man countered: "You know the lawsuit…."   The men then left the restaurant.  However, one of Edalat's guests at the table then followed the men outside as they exited the restaurant and asked them to clarify what lawsuit they were referring to and the men replied:  "The lawsuit with

the lab.  He knows the lawsuit."  This incident took place four days before a scheduled court date in the Blaine case.  These and other incidents coincided with events in the litigation referenced in this case.

50.  On May 28, 2019, on information and belief Blaine sent a text message to Brandon Reich of Gulf Coast Pharmaceuticals, a Vivera client.  The message contained allegations and wording similar to those in the letter sent to Hannley, for example it stated that Paul Edalat "initiated multiple lawsuits".  This text was designed to interfere and did interfere with the business relationship.

51.  On June 25, 2019, Paul Edalat received a text message from an anonymous number which stated:



1

2       The text resembled prior messages known to have come from

3   Blaine.

4       52.   On June 25, 2019, Robert Blaine telephoned Paul

5   Edalat's cousin Max and left statements similar to those in the

6   Greg Hannley letter.  The statements were recorded.  Blaine

7   specifically claimed Paul Edalat had "conned" people, which

8   resembles the language in the anonymous letter and texts.

9       53.   On or about October 11, 2019, following a court

10  hearing, Blaine's lawyer Keith Greer told Paul Edalat's lawyer

11  Oren Bitan that "a web site has been created **listing all of**

12  **Paul's legal history** (and potentially other things) that Blaine,

13  Mann and others would publicize, and that if Paul withdrew the

14  civil harassment injunction then pending against Blaine (at a

15  minimum), the would withhold going live on the site"

16      54.   As it happened, the eventual website (see below) did

17  indeed list Paul's legal history, specifically, it contained

18  copies of pleadings from lawsuits involving Paul Edalat including

19  lawsuits filed in the Orange County Superior Court.   On

20  information and belief, in April 2020, Greer or a person

21  associated with him or another defendant retrieved copies of the

22  Orange County lawsuits that were posted to the website.  Keith

23  Greer is identified as a witness in this case and will be called

24  as a witness.

25      55.   In December of 2019 Robert Blaine's attorney Stephen

26  Duringer mailed intimidating letters to Vivera employees.  The

27  names and addresses on the letters matched names and addresses on

28

Blaine Labs payroll records from the time Vivera employees were working at Blaine Labs.

56.   Duringer's letter to plaintiff Farah Barghi was addressed to "Farah-Dokht Barghi".  In court filings served on Duringer and Blaine, Farah Barghi's attorney explained that Farah usually does not go by "Farah-Dokht" but only Farah Barghi.  In subsequent mailings (see below) evidently from defendants spelled the name Farah Barghi.

57.   In or about April of 2020 a series of defamatory comments were posted on Paul Edalat's, his family members' and Vivera employees' Instagram profiles.  The poster was an Instagram account DJNOSTALGIK.  DJNOSTALGIK has been linked to Blake Allen-Blaine who is Robert Blaine's son and is or was an employee of Blaine Labs.

58.   On April 7, 2020 a letter was mailed to Vivera's headquarters addressed "ATTN: CEO" with the "from" address as a Malibu address associated with plaintiff Greg Hannley.  The letter stated Paul Edalat is a homosexual (which is false) and that Paul had "destroyed" Greg Hannley's company Soba.  In context it is clear the letter came from defendants.  The letter read as follows:

> Paul Edalat,
> You destroyed Soba Malibu.
> That, in part, has destroyed Greg.
> You are a fraud and we all know now.
> You are homosexual and Greg knows it.
> It is okay to reveal yourself. He will not care.

59.   On or about June 2, 2020, an investor in Vivera received an email from an employee of Howard Mann's company

warning that "something was going to go down" in reference to Edalat.

60.   On June 11, 2020 the website "pauledalatisgay.com" was registered through a crypto-currency domain registrar in the Bahamas.   On information and belief, defendants registered this and the other websites referenced in this complaint and published the websites.

61.   In June 2020, defendant Bruce Cahill pulled photos (including copyrighted photos -- see below) from Paul Edalat's social media pages.   These same photos were later utilized on the websites pauledalatisgay and related websites and a Twitter page set up by one or more defendants (on information and belief). Cahill made a mistake while retrieving the photos.   Cahill clicked once too often on one photo with the result that he recorded a "like" on the photo.   Cahill later cancelled the "like" but a record was retained.

62.   The website went live on or about July 6, 2020 at address www.pauledalatisgay.com.   This website identified plaintiff Paul Edalat and others by name and contained numerous false, defamatory and libelous statements, falsely presented as being written by Paul Edalat himself, including:

(a)   "Paul Edalat is Gay... Join us as we explore the gay and fraudulent life of Paul Edalat.. . .

Published on the site is a photo of Paul Edalat and a gentleman.   Underneath defendants wrote:

"So Gay

1  "Do you ever wonder why I am overly masculine and put lions
2  all over my social media?  What am I overcompensating for?"

3  In this and throughout the website, the website falsely
4  presented the statements as being by Paul Edalat himself, i.e.
5  Paul Edalat describing himself.

6  (b)  Under a photo of a kitten on the website plaintiffs
7  published, "I'm tough on the outside but it's all fake.  I'm
8  really a big pussy.  It's part of being a coward and a fraud. -
9  Paul Edalat."

10  (c)  Under a photo of a Defy magazine cover appeared:
11  "Light reading for gay guys.  Would you call me a
12  metrosexual?

13  "The lion means I'm a big pussy.  But you knew that
14  already.. . .

15  "So sad, no more men."

16  Over a photo of Paul Edalat driving a car was published:
17  "I'M SO NOT GAY.  FAST CARS FAST MEN NO WOMEN TO BE FOUND"

18  Paul Edalat is not gay.  Here it is to be noted that while
19  calling someone gay, in and of itself, may or may not be
20  libelous, but stating that someone is "overly masculine" and
21  "overcompensating" and "a big pussy" is libelous.  The website
22  and other statements referenced herein traded on well-worn,
23  thoroughly insulting and homophobic tropes that gay men
24  "overcompensate".

25  (d)  On the website was published a photo of Paul Edalat,
26  plaintiff Richard Darnell and Kiki VanDeWeghe, Executive Vice
27  President of Basketball Operations for the National Basketball

28

League (NBA).  A photograph was also posted of plaintiff Greg Hanley and Paul Edalat together, and another photo of plaintiff Alex Draghici, Paul Edalat and Greg Hanley together.  The website has multiple photos of Paul Edalat and older gentlemen, many of whom are prominent Orange County businessmen or sports figures.

(e)  Also published on the website were photographs of Paul Edalat and various high-end automobiles.  Juxtaposed with these photos defendants published text including:

"Sprinkle in a dash of stolen high end vehicles and the ruse is complete.. . .

"Notice how I'm never driving any of these cars.  It's because I don't really own any of them.  I'm scamming you, just like the old men I scam."

It need not be stated that these statements are libelous and defamatory in that they state, falsely, that Paul Edalat stole the cars in the photo.  Elsewhere defendants published that Paul Edalat has a "stolen Rolls."

(f)  The website further stated:

"Next I show them some fake paperwork.  My favorite is this BS patent out of Canada."

Under this statement was published a photograph of Paul Edalat holding his Canadian patent, which is most assuredly not "fake" as defendants contend.  Under the photo was published, "Total fake and you fell for it."

These statements are false and defamatory especially in that the Canadian patent is a valid patent.  It can be recalled that Howard Mann and AH were informed of and took an interest in the

Canadian patent.  Mann and AH made a similar claim that Paul
Edalat's patents were "fake" or words to that effect in the
Alternate Health litigation.

    (g)  The website also published false and defamatory
statements about Paul Edalat's family and other plaintiffs,
including the following juxtaposed with a photo of Paul Edalat

> To top it off, I do what I do best.  I use my
> family members as part of the fraud.  Think of
> them as props.  My favorite prop is mom.  I love
> to post pictures of mom on my social media to
> tell the world how much I love her.  It shows my
> soft tender side (which is my normal, non-fake
> side).  But most importantly, it sucks the old
> men right in so they trust me even more.  I would
> show you my sister Farah's photos as well, but
> she has an eating disorder and crimps my style
> (she's really fat if you were wondering, I mean a
> total supersized BBW).  You gotta stay thin in
> The OC.  Image is everything."

Under this text was published a photo of Paul Edalat and his
mother.  Under the photo was published:

    "Shhhhhh, mom doesn't know I steal for a living.  Let's
keep this a secret between just you and me."

    The references to Paul Edalat's mother and sister are
significant in light of their later threats to and involving both
individuals.  It might be added here that harassment of Paul's
mother is a Cahill Tactic.  In the prior litigation Cahill sent a
hireling to pound on Paul's mother's door.

    (h)  The website also published a photograph of Vivera
employee Olivia Karpinski, juxtaposed with the following text:

1
2
3
4
5
6

> After I have my meat hooks in them the work
> really starts.  I employ my second secret weapon.
> Olivia Karpinski.
> <https://beautypageants.indiatimes.com/others/for
> mer-beauty-queen-accused-of-
> fraud/articleshow/59037252.cms>  She's like me.
> A total fraud.  After mom, Olivia is my greatest
> prop and a total mule.  She runs around and does
> my dirty work.

7
8
9
10
11
12
13

> Olivia is a pretty face of the operation if
> you're into women.  Which I'm not.  She distracts
> the old rich guys so I can work behind the
> curtain at stealing their money.  Karpinski also
> takes out the trash, does my laundry, irons my
> shirts, lies, and otherwise is useless.  I pay
> her shit but that's because she's not that smart.
> Which is why I can get her to do pretty much
> anything illegal I want. But that's what often
> happens when you're pretty (sort of).

14    Under the photograph was published:

15    "Hot, but not.  Edalat

16    The above link is to an Indian reprint (since taken down) of

17 an article (since retracted) originally "planted" in the New

18 Hampshire Union Leader newspaper by Bruce Cahill, acting through

19 his public relations firm Denterlein.  The article falsely stated

20 that Olivia Karpinski had "retracted" her sexual harassment claim

21 against Bruce Cahill, which was false.  The statements are also

22 otherwise false and defamatory.  This is another connection to

23 Cahill who, as noted above, has a pattern of planting false

24 stories about Karpinski.

25    (i)  Defendants also published on the website:

26
27
28

> I also have a money person.  In this case it's a
> woman named Nichole Fletcher.  Nichole lives in
> my house.  We don't have sex because I'm not into

women.  Nichole hides all of my stolen cash.  I
keep her locked up like a mushroom in my house.
Cold, dark, and smells like s*&t if you know what
I mean.. . .

Nicole Fletcher loves to live in the dark.  She's
good at money laundering too."

It should be noted that in prior litigation with Cahill,
Cahill unsuccessfully tried to make out the specific, false claim
that Nicole Fletcher was hiding money for Paul Edalat.  This same
false claim was inserted into the website.

(j)  The website also published the following false and
defamatory material:

"I hate to be rude, but fuck the Feds.  They couldn't catch
me even if they tried.  The Feds are the laziest most incompetent
bastards to have ever set foot on the planet.  They will never
get me.  Never.  Go ahead, give it your best shot.  And the IRS
you ask?  You can't get me for tax evasion if I'm stealing all of
the money.  Total losers.. . .

(k)  The website included a link to a video posted on
Bitchute.com, at www.bitchute.com/video/dmpLu9XiJZ2W/  This, like
similar videos posted by defendant, consists of an actual
unrelated video of a gentlemen speaking in Spanish.  Defendants
added subtitles to the effect that "Paul Edalat is a fraud and a
thief".

63.  Published on the website were photos of Paul Edalat and
other gentlemen including plaintiffs Rick Darnell, Gregory
Hannley and Alex Draghici.  Juxtaposed with these photos were
published the following false, libelous and defamatory
statements:

22

Theater of Operations

I will scam anyone, anytime, anywhere.  But I
like rich old guys in Orange County the most.
Call it, "Daddy Issues".  Is it because I'm
short? . . .

When I spy an older dude at Pelican Hill, the
first thing I think of is what it would be like
to get him in the sack.  Those thoughts quickly
subside to the real action though.  Like a lion
(or pussycat) on the prowl, I want to devour
anything in my path.  The easiest targets are
rich older dudes and it's not just for their
money.. . .

The fraud goes like this.  I flaunt my stolen
wealth at places like Pelican Hill and other
showy spots in Newport Beach.  I get to know
dudes and they know other dudes.  Eventually I
find the right target.  Old, white and rich.  I
show him my Instagram photos most of which are me
flexing my biceps.  The old guys seem to like
that.  I also throw in a couple of extra shots,
some unshaven, some with baseball hats.  But most
of all, **sunglasses**.  It shows how tough,
mysterious, and bourgeois I am.  It also helps to
hide my lying eyes.. . .

Total douche.  Also notice, my social media is
populated with men.  Big, strong, masculine men.
No woman other than mom to be seen.. . .

After I have bagged the old rich guys with my
awesome photos, I show them a good meal, take
them around in my stolen Rolls, and I appeal to
their egos.  Every old rich guy has an ego and I
am willing to, "stroke it" any chance I can get.
After I have pulled them into my grasp, the con
is almost complete.

64.   Under one photo of Paul Edalat, Greg Hanley, Alex Draghici and others was published, "More men... I mean suckers."

65.   Under an aerial photo of Newport Beach was published:

> Newport Beach is my oyster.  Look at all those
> hot, rich, old men down there.

66.   The juxtaposition of this text with photographs of Paul Edalat together with plaintiffs Richard Darnell, Greg Hanley and Alex Draghici constitutes clear libel and defamation, too offensive to restate here, as against these plaintiffs, without need for elaboration.  Defendants knew specifically that plaintiffs Richard Darnell, Greg Hanley and Alex Draghici were engaged in business with Paul Edalat and Vivera.  Among other things, defendants wanted to disrupt that business through their website and other publications.

67.   The website contained a list and copies of pleadings from various civil lawsuits in which Paul Edalat was or had been involved.  This relates right back to Blaine's lawyer's Greer's warning that a website had been set up with a listing of lawsuits in which Paul was involved.

68.   At approximately the same time (July 2020) on information and belief defendants, or one of them, set up a "protonmail" email account that they believed was secure and untraceable.  On information and belief, defendants have used these protonmail accounts to harass, threaten and taunt Paul Edalat and other plaintiffs, their family members and associates.

69.  For example on July 6, 2020, an email was sent to Oren Bitan, Paul Edalat's attorney, from "pauledalatisgay@protonmail.com which stated in part:

> Now we know you are already writing up a new complaint for defamation, slander, etc. but not so fast.  Your yammering about exhausts us.  What are you going to find are dead ends.  Everywhere.  There are over 40 victims listed on pauledalatisgay.com to date.  There will be more.  You may think you know who created the website, but you really don't.  Was it a victim?  An attorney?  A jilted gay lover?  You just don't know.  And you never will.
>
> Sincerely,
>
> The 'Good Luck Trying Oren' Team

69A. These and other emails to plaintiff's lawyers coincided with events in the litigation that were known to defendants, for example a hearing, a filed motion, etc.

70.  On July 10, 2020, Bruce Cahill texted Paul Edalat. Like Greer before him, Cahill demanded that Edalat drop litigation "If you want all of our issues to go away."  Cahill also included a threat, saying, "I do believe you have more serious issues coming up, which you need to focus on."

71.  Also on July 10, 2020, Paul Edalat placed telephone calls to Cahill and Cabo.  Both thought the call came from Howard Mann and that the speaker on the line was Howard Mann.  This is abundantly clear from their responses, for example Cahill said "Howard!", sounding quite pleased to hear from Howard.  Through their responses both Cahill and Cabo admitted complicity in the website.  Briefly:

"Mann" told Cahill "we have to take down the website" or words to that effect.  Instead of asking, "What website?", Cahill immediately asked, "Why?"  Cahill caught on shortly afterwards and tried to backtrack.

"Mann" told Cabo similar words.  Cabo said Gordon Malic, the broker in Canada, should be added to the website, and other statements showing complicity.  Cabo's statement not only displayed knowledge and complicity, it also constituted an affirmative act to add to the website.  Recall that Cabo thought he was speaking to his fellow AH director Howard Mann.

72.  On information and belief, immediately following the calls, Cahill, Cabo and Mann called each other and discussed the calls.  On information and belief, defendants concluded Paul Edalat had made an attempt to get evidence against the defendants consisting of defendants' own statements.  On information and belief, defendants decided to threaten Paul to scare him away from further inquiries.

73.  The next day, on July 11, 2020, Paul Edalat received an anonymous text message with threats to his safety and life and that of his family.  The text is reproduced below:

74. As noted above, the day before the text, Paul Edalat had telephoned Cahill and Cabo regarding the website. The July 11 text referred to calls to "my crew" ("you wanna call my crew and see if you can catch me"). This clearly referenced the calls to Cahill and Cabo. The text, coming the morning after the calls to Cahill and Cabo, is further proof defendants are responsible for the campaign. No one other than Cahill, Cabo and Mann would have known of the July 10 telephone calls to the "crew". Put another way, the sender of the text was aware that Paul Edalat had called individuals responsible for the website (my crew). The only such individuals Paul ever called were Cahill and Cabo. Thus it is obvious the text, and by extension the entire campaign, was conducted by Cahill, Cabo, Mann and their associates.

75.   In July 2020 a series of envelopes were mailed in manila envelopes, with stamps, postmarked Las Vegas on July 8, 2020 and July 18, 2020.  The envelopes all bore the sender address Paul Edalat, 12 Sable Sands, Newport Coast, CA 92657 -- the same return address as the May 2019 Greg Hannley letter. Each envelope contained a color printout of the pauledalatisgay.com website.  The envelopes were mailed to and received by plaintiffs, family members (including Paul Edalat's mother), their attorneys and business associates, and also employees of Vivera.  One or more of the envelopes was addressed to an employee at the same address as on Blaine Labs payroll records, although that was not the current address at the time of sending.  That address information was only available to Blaine. On information and belief the defendants or one or more of them sent the letters and probably printed and prepared them at Blaine Labs using tape and packaging available at Blaine Labs.

76.   Each letter constituted defamation, libel and other wrongdoing to the same extent as the website itself.

77.   Specifically, or about July 8, 2020, and continuing to this day, Plaintiffs are informed and believe that Defendants mailed or caused to be mailed an onslaught of letters that reflected Edalat's "from" address and addressed to Edalat's lawyers, business contacts, and family members.  Multiple packages were sent to the recipients, with as many as 5 packages addressed to Edalat's elderly mother.  The letters contained print outs from Defendants' website, www.pauledalatisgay.com and all stated, more or less:

> We encourage you to visit www.pauledalatisgay.com to view all of Paul Edalat's lawsuits, tax liens, bankruptcies, fraudulent cases, and more in great detail.
>
> We encourage you to think twice before you engage in any business dealings with someone who has scammed dozens of investor and stolen millions of dollars.

78.   In all, over 40 packages were sent in this first batch of mailings. The packages were mailed to the home address of Vivera's counsel, Oren Bitan of Buchalter, addressed to his wife, and over a dozen mailed to Buchalter's CEO. Packages were received by Vivera's former intellectual property counsel that it had not worked with in some time reported receiving an envelope as well as Vivera's public relation's firm, Mercury, addressed to Vivera's advisor at the firm as well as to Vivera Advisory Board member Mayor Antonio Villaraigosa. Employees received mailings to their home addresses. Vivera's Board members and advisors received multiple mailings to their home and business addresses. Multiple packages were addressed to Edalat's elderly mother purely to cause emotional distress.

79.   The mailing of these packages had their intended effect of disrupting Vivera's relationships with its attorneys and advisors, as they now feared for their safety and the safety of their families- causing Mercury to drop Vivera as a client and creating a rift in the relationship with Vivera's counsel. Vivera employees began to fear for their safety as they received packages to their homes.

80.   On information and belief, defendants or one or more of them sent or caused to be sent the packages, and continue to send the same.

81.   On or about July 13, 2020, based on information and belief, Defendants or one of them sent an email to Oren Bitan, from "The Team" with an email address of pauledalatisgay@protonmail.com.   The email included the following message:

> Oren,
> We are getting concerned for your safety based on the newest item uncovered: […] Just a reminder, Paul wont pay you cent [sic].  He's never paid an attorney yet.  We have proof and we almost feel sorry for you.  But not.  You made your bed with the devil.
> The Team.

82.   On July 15, 2020, Paul Edalat, Farah Barghi, Greg Hannley and Oren Bitan and Paul's family members all received the same anonymous text message, "we hope you enjoyed the present if HE doesn't pay up your website is next."  In context this message almost certainly came from defendants.



83.   On July 18, 2020, threatening letters that referenced the website were mailed to Farah Barghi's home address.   In context these letters also came from defendants or one of them. The letter stated:

> We know you are hiding everything.  Just wait.  We found you now and we will find you again.  No one can help you. Your homosexual brother does not care.  Too bad your brother cannot save you from what is about to happen.  If you think it was bad before, your life is about to be so much worse.  Watch out.  Run your Porsche off a cliff before we are done.

> We are going to ruin your life and ruin your family.  Hope you have fun.  You will never know who we are or what we can do to you.  You never will.  You will only find dead ends and one day it will be too late.  Your fraud family is going to pay.

84.   Fearing for her life, Farah obtained a trained service dog.   On information and belief, defendants secretly took photos of Ms. Barghi with her dog and emailed the photos to her from pauledalatisgay@protonmail.com.   The email had the subject line "stupid bitch" and read, "Fucking dog won't save you bitch."   The attached photos of Ms. Barghi and her dog were entitled "dumb-bitch-1.jpg", "dumb-bitch-2.jpg", etc.

85.   On November 19, 2020, on information and belief defendants sent Farah another email from pauledalatisgay@protonmail.com with more photos of Farah attached, each labeled "dumb bitch 1.jpg" etc.   The email read, "Tell your brother he can keep trying, we won't stop.  Hail hydra!  There are hundreds more of these.  Push us to make it worse."

86.   "Hydra" was another reference to the website.

87.   In or about November 2020 on information and belief defendants set up another "secure" email account called "caringfortheworld@protonmail.com" and another, less secure, gmail account "pauledalatisafraud@gmail.com".   Multiple defamatory and/or threatening emails from this email account were sent to persons associated with Paul Edalat.

88.   For example on November 25, 2020, defendants emailed Greg Hannley from "caringfortheworld@protonmail.com" and wrote:

> Hello Greg:
>
> I see you belong to the executive team for Vivera pharmaceuticals.
>
> Have you googled your CEO?  Do you have a clue who you're working with?
> . . .

89.   It should be noted the website itself boasted about how their website comes up readily on Google searches.

90.   On November 24, 2020, on information and belief defendants sent an email from caringfortheworld@protonmail.com to Gerald A. Maguire, an associate of plaintiffs, and wrote:

> Dr. Maguire:
>
> Your recently posted professional relationship with paul edalat strongly suggests your compromised acuity to recognize a true psychopathic con man who presently sprints on a path to federal prison.
>
> Beware of the malevolent dark triad initially manifested by edalat in 1997 and continues today.

91.  On or before November 25, 2020, plaintiff Vivera announced a business relationship with an investment bank.  On November 25, on information and belief defendants sent an email from "pauledalatisafraud@gmail.com" with the sender name "Paulina Edalat" to the investment banker involved and stated:

> It has come to our attention you have entered into a deal with Paul Edalat.  It appears you have not done your due diligence regarding Paul Edalat.  He is a major criminal that steals millions from unsuspecting rich men just like you.
>
> There is a website dedicated to Paul that shows his 45 lawsuits, pauledalatisgay.com.  There is a companion site called pauledalatisstillgay.com as well.

92.  On December 22, 2020, on information and belief defendants sent an email from caringfortheworld.com to Vivera employee Olivia Karpinski with the subject line "Temporary Freedom" which stated:

> Our files show you are a known associate of Paul edalat, the well-known con man from New Port Beach, CA.  Actually, our records show you are classified as his co-conspirator fraudster.
>
> Enjoy your freedom.  It is temporary.

93.  On or about January 4, 2021, on information and belief defendants, or one of them, caused an email to be sent from caringfortheworld@protonmail.com to Greg Hannley which contained the following threat:

> "Please forward to the con man, edalat, in Orange County, CA."

" you and Oren Bitan purposely humiliated and
embarrassed my mother who lives alone.  Because
of you, edalat, she is suffering emotionally.
Because of you, edalat, your mother will suffer
emotionally.  My turn."

"Karma"

94.  It should be noted that photographs of Paul Edalat's mother were posted on the website, and one or more printouts of the website were mailed to Paul's mother.

95.  The above text referred to the sender's mother.  It can be recalled that Howard Mann secretly sold AH shares through his mother.  This fact was pointed out in the report to the Canadian securities authorities in 2020.  The above text is, on information and belief, a response from Howard Mann.  Mann in effect blamed the recipient for Mann's own conduct in placing Mann's mother in the position of selling shares.  The text is therefore consistent with Howard Mann as sender.

96.  On or about January 4, 2021, Vivera sent out a press release regarding a partnership with the investment bank.  Defendants immediately responded by sending an email to the banker from their new email account, "U.S.fraudsterdatabank@protonmail.com" which stated:

"Vivera Pharm/Burkhan World Group Announces
Partnership"

Really?

Clearly no due diligence was carried out on Paul
Edalat or Vivera.

Edalat is orange county, California's most
notorious and watched con man with 13 aliases,
>40 lawsuits, multiple bankruptcies, multiple
failed companies (>20 in last y years) and who is
presently running the scam "company" vivera
pharmaceuticals.

Don't believe us?  call the FBI and say his name.
You will not have to spell the last name.
believe me, they already know!  really, please
call them.  ask for the fraud division

97.  As a direct result of this and other emails and
defamatory materials sent, Vivera lost important business.

98.  On information and belief, defendants also created and
published a website called "pauledalatisstillgay.com" on or about
July 27, 2020.  This website repeated several of the same
statements as the original website.  This website also included a
photograph of Paul juxtaposed with a photo of an undressed men
with the name "KYLE" on his brief and the text:

"When I go to prison for fraud and stealing from old white
men in Newport Beach I want to snuggle next to Kyle."

Plaintiffs also published on this video a photo of an
elderly woman "giving the finger" and the text "FUCK YOU PAUL
GOOD LUCK FINDING US YOU LITTLE BITCH."

99. On information and belief defendants published one or
more videos on Youtube and Bitchute.  The videos posted on
Youtube consisted of photos of Paul Edalat with a synthesized
voiceover stating, "Paul Edalat is a thief" and similar
statements.  The videos published on Bitchute consisted of an
actual unrelated video of a gentlemen speaking in Spanish.

Subtitles were added to the effect that "Paul Edalat is a fraud and a thief".

100. In addition, starting on July 6, 2020, on information and belief defendants posted one or more videos with accounts they created on Youtube (pauledalatisafraud) and Bitchute (pauledalatte).  The videos are described in detail below.

101. Youtube took down the videos on or about November 17, 2020.  On or about November 19, 2020, the former Youtube videos were posted to a second Bitchute account entitled (pauledalatisreallygay).  In January 2021, Bitchute took down the first account.  At or about the same time, links to the videos were posted on the website "pauledalatisstillgay.com".

102. The false, libelous and defamatory videos posted by defendants (on information and belief) to Youtube, Bitchute and the website(s) include the following:

(a)  A video with photos of Paul Edalat followed by photos of unknown men in stages of undress, with a synthetic voiceover that states,

> When Paul Edalat of Newport Beach wakes up in the morning, there are only two things he thinks about: stealing money and men.  Big hairy masculine men.  Paul Edalat wants to go to prison because he wants a big buff bunk mate to spend his nights with.  Some day Paul will get to prison because he steals millions from rich old men in Newport Beach.  If you are a victim of Paul Edalat contact the FBI immediately.  To learn more go to pauledalatisgay.com.

(b)  A video with photos of Paul Edalat and other gentlemen followed by photos of unknown men in stages of undress, with a synthetic voiceover that states,

1
2
3
4
5
6
7
8
9

   Are you a victim of Paul Edalat? Paul Edalat of
   Newport Beach California likes to steal money
   from rich old men.  He has stolen millions.  Paul
   Edalat is very afraid of the inside of a jail
   cell.  He does not want to go to prison but he
   can't help his compulsion to steal money.  Paul
   Edalat steals, because he is secretly curious
   about other men in prison.  Are they as big,
   strong and masculine as Paul has imagined them to
   be?  Please help Paul Edalat get to prison.  If
   you are a victim of Paul Edalat contact the FBI
   immediately.  To learn more go to
   pauledalatisgay.com.

10
11
12

 (c)  A video with photos of Paul Edalat and other gentlemen
including plaintiffs Richard Darnell and Greg Hanley with a
synthetic voiceover that states:

13
14
15
16
17
18
19
20
21
22

   My name is Paul Edalat and I am one of the
   biggest Newport Beach scammers of all time.
   There is no one in Newport Beach lower and
   scummier than me.  You wanna know how I scam rich
   old men?  Let me tell you.  First I create a fake
   patent from Canada.  Second I create a fake
   company that pretends to sell supplements.  Then
   I take the fake patent and show it to the old
   men.  Did I mention that I really like old men?
   They turn me on.  After I suck the old men then I
   steal millions from them with fake contracts.
   The old men are so gullible.  If you have been
   defrauded by me, contact the FBI immediately.
   They need to know I am a criminal.  To learn more
   go to pauledalatisgay.com.

23
24
25

 (d)  A video with photos of Paul Edalat and other gentlemen
including plaintiffs Richard Darnell and Greg Hanley with a
synthetic voiceover that states:

26
27
28

   My name is Paul Edalat and I am a fraudster
   living in Newport Beach.  I will do whatever it

takes to steal money from old men.  I love old
men so much.  They really turn me on.  I wish I
could have old men in my life all of the time.
If you want to learn more about me please go over
to pauledalatisgay.com to learn more.  You get to
see all of my sexy photos and all of the other
scammers who help me steal money.
Pauledalatisgay.com is the best website ever.

(e)  A video with photos of Paul Edalat and other gentlemen
including plaintiffs Richard Darnell and Greg Hanley, followed by
a photo of an undressed man, with a synthetic voiceover that
states:

Do you want to learn more about a dirty rotten
fraudster in Newport Beach named Paul Edalat?  He
is one of the worst human beings to walk the
planet.  He has stolen millions of dollars from
unsuspecting old men.  Paul loves old men.  You
can go to his website pauledalatisgay.com and see
Paul with the men he loves so much.  Paul has
over 45 lawsuits and four bankruptcies.  He loses
every lawsuit he's ever filed.  Paul is
desperately trying to go to jail for stealing.
He wants to snuggle up close to his bunkmate when
he gets to prison.  Learn all about Paul Edalat
at pauledalatisgay.com.

(f)  A video with photos of Paul Edalat and other gentlemen
including plaintiffs Richard Darnell and Greg Hanley with a
synthetic voiceover that states,

Paul Edalat likes to steal money from old white
rich men in Newport Beach.  He has stolen
millions.  Paul Edalat has two women who help him
steal.  Olivia Karpinski and Nicole Fletcher.
Paul shows off Olivia to the old men.  She is a
has-been washed up woman who Paul treats like
garbage.  She does whatever Paul Edalat tells
her.  Paul keeps Nicole Fletcher locked away like
a mushroom growing in shit in his house.  Nicole
Fletcher launders the money Paul Edalat steals.

> Paul, Olivia and Nicole want to go to prison and
> are trying hard to get there.  If you want to
> learn more about the three of them go to
> pauledalatisgay.com.  If they have stolen from
> you, contact the FBI.

103. On July 20, 2020, on information and belief defendants also created a fake twitter account and page entitled "Paul Pejman Edalat Barghi FAN PAGE."  Defendants published on the page a (registered copyright) photo of Paul Edalat.   On it was published false and defamatory statements including:

> "I recently Came out.  I love My Body but I
> hate my UGLY Face.  It hate it.  LOOK a recent
> bankruptcy of mine From 2020 (I have more
> docketbird.com/court-cases/Paul-Edalat/cacb-
> 8:2014-bk-14529."

104. The twitter page contained a link to a specific Docketbird page.  Docketbird is a website that, for a fee, gives access to documents filed in legal cases.  The above docketbird link is to a page at docketbird that contains case file information for a Paul Edalat case.  **Defendant Bruce Cahill subscribed to Docketbird and paid to keep this link open.** Evidently, Cahill supplied the link for the above twitter page.

105. Defendants also posted highly explicit photographs of gay pornography to the twitter page.  Defendants then caused "Paul Pejman Edalat Barghi FAN PAGE" to comment on the photos, "but they all look so handsome" and "I look forward to printing out your pictures" and "get loose fellas :)"

106. This was a spoof twitter page made to appear to be Paul Edalat's own page, in other words, defendants falsely made it appear that Paul Edalat was posting the comments.  The Docketbird

1 link, paid for by Cahill, makes clear Cahill was involved in this
2 twitter page.

3     107. In addition, on information and belief defendants have
4 posted, on a large number of sites, content ("profiles") that
5 contains links to the websites pauledalatisgay.com or
6 pauledalatisstillgay.com.  Defendants have done this both to
7 drive traffic to their sites and also to cause (or to attempt to
8 cause) the websites to appear higher up on Google searches.

9     108. The threats are ongoing and continue to this day.  As
10 recently as, January 28, 2021, the harassment continued with an
11 investor of Vivera receiving an email calling Edalat a "con man"
12 and Vivera a "scam," among other harassing claims.  The email
13 came from an email address U.S.fraudsterdatabank@protonmail.com.

14     109. As of February 12, 2021 the mailings have continued and
15 indeed escalated, with Edalat's mother receiving letters
16 addressed from her deceased son.[MOU1]    Recall that exploiting
17 Paul's deceased brother was a "Cahill Tactic" in the Cahill
18 litigation.

19     110. Mailings have now been sent to the University of
20 California at Riverside and the Dean of its Medical School and to
21 the Chair of its psychiatry department Dr. Gerald Maguire, an
22 advisor to Vivera. This has caused the University to pause all
23 ongoing projects with Vivera. Mailings have been sent to Vivera's
24 business partners causing these partners to step away from
25 ongoing multi-million dollar transactions with Vivera. Vivera's
26 counsel at Prospera Law- currently representing Vivera in the
27 litigation with Blaine- has also received mailings to their home
28

address. Many of Vivera's partners have now, out of fear for their safety and that of their families, ceased their ongoing relationships with Vivera.

All of this has had the intended effect of causing deliberate harm to Vivera and has hampered Vivera's ability to continue conducting its normal business operations.

111. Recently, on information and belief, defendants or one of them caused to be sent packages containing printouts of the website to Paul's mother addressed from "Paul KOONI Edalat" with addressee Farah DONBEH Barghi." "KOONI" is a particularly vile Iranian term for homosexual. "DONBEH" is a (misapplied) Iranian term for "lard" connoting fat. Again, reference to Iran was a Cahill Tactic.

112. On information and belief defendants, or one of them, also publicly threatened to brand Paul Edalat as a homosexual in Iran. Homosexuality is a capital offense in Iran and publicly airing this accusation makes it difficult or not impossible for the victim to travel to Iran, and also puts family members in Iran at risk. Again, taking advantage of Paul Edalat's Iranian origin is a Cahill Tactic.

112. On February 25, 2021, Edalat's attorney in the Alternate Health Litigation, Saied Kashani, spoke with John Markham, attorney for Mann and AH in that same case. Kashani discussed a settlement proposal. On information and belief, Markham informed Mann of the settlement proposal that same day.

112A.    The next day, February 26, 2021, Kashani received an email from another fake email account, "vivera-invisible@protonmail.com" which stated:

> just so you know paul said again yesterday that
> he has no intention of paying you.  I think you
> know this is the truth.  oren wised up and so
> should you.

113. The email presumptively came from defendants.  First, like other emails to counsel, it coincided with an event in the litigation known only to Mann and by extension the other defendants (settlement proposal).  The email also referenced "oren" meaning Oren Bitan, or Edalat's counsel in other cases involving these same defendants.  A random third party would hardly know the timing to email Kashani, or *also* be following other litigation in which Oren was counsel.

113A.        On March 16, 2021, defendant Robert Blaine was served with the complaint in this action.  That very same day, March 16, an email was sent to Saied Kashani, attorney for plaintiffs herein, at the email address listed on the complaint, from a (supposed) "anonymous" email account "wefindfraud@protonmail.com".  The email read:

> Welcome to fraud.com, our partner organization. We
> were aware of Greg Hanley, and now, with your recent
> introductionas a lawsuit, we are aware of Rick Darnell and
> Alexander Daraghici as associates of edalat. New people
> to watch and learn about. Thanks.

> Your guy edalat keeps many attorneys busy, that is
> obvious for the past 20 years! Wow.

We are not attorneys, but to us your lawsuit appears to
be rushed, materially flawed, accusing the wrong targets
( fromour 10 year observation of edalat), and not
Harvard-level at all.

Fact checks agree with the gay website. Not your lawsuit.
And Edalat is gay. Accept it.

Sent from ProtonMail Mobile

113B.     The complaint was never publicly released and, as
of March 16, 2021, had only been disclosed to defendants via
service or courtesy copies to defendants' counsel.  The email
refers to information only discernible from reading the
complaint.  There is little doubt the email came from Blaine, who
obviously thinks he can be anonymous behind a protonmail account.

**D.   Defendants Infringe Edalat's copyrighted images**

114. Edalat first published various photographs of himself
in 2016.  Edalat used these photographs on his own website and
social media as part of his social footprint.
Edalat is the owner of the copyrighted images (the "Copyrighted
Images") that were first published by Edalat in 2016.  The
Copyrighted Images are set forth hereinbelow as *Image A, Image B,*
and *Image C* (collectively, the "Copyrighted Images").  Edalat
alleges herein that the copyrighted works are worth not less than
$75,000.

**Plaintiff's Protected Copyrighted Images:**





*Image A*                    *Image B*                    *Image C*

43

115. Since 2016, Edalat has used and continues to use the Copyrighted Images in interstate commerce and in the state of California.

116.  Commencing in 2020, on information and belief Defendants obtained, copied and misappropriated the Copyrighted Images by adding them directly to their own websites and social media platforms.  In particular, Defendants posted the Copyrighted Images on their website named: pauledalatisgay.com and on their Twitter account "Paul Edalat Bargh," as follows:

**Defendants' webpage:**



1   **Defendants' Twitter Page:**



2
3
4
5
6
7
8
9
10
11
12   **Defendants' YouTube Page:**



Paul Edalat Loves Ripping
Old Men Off

8 views • 1 week ago

20      117. Edalat subsequently registered the following copyrights

21  with the U.S. Copyright Office on or about November 11, 2020, the

22  U.S. Copyright Office, registration number VA 2-223-704.

23      **E.   Conspiracy**

24      118. On informed information and belief, each and all of

25  defendants participated in and contributed to the defamation,

26  threats and other misconduct alleged herein.  Plaintiffs hereby

27  charge each and all defendants with civil conspiracy, by which

28

1  each defendant is fully responsible for the misconduct herein to

2  the same extent as if each personally did all the misconduct.

3      118. The misconduct herein, from the initial anonymous

4  letter to Greg Hannley through the websites and escalating

5  threats, all follow the same pattern and include one or more of

6  the same elements as alleged above.  It is obvious that the

7  letters, mailings, emails, texts, websites and pages are the

8  product of the same operation or conspiracy.

9      119. The exact conduct and participation of each of the

10  defendants is not known at this time.  However, it can hereby be

11  alleged that each contributed as follows to the conspiracy, at a

12  minimum:

13      (a)  <u>Cahill</u>:  Cahill retrieved the images from Paul Edalat's

14  social media that were used on the websites and twitter pages.

15  Cahill also supplied and paid for the link to Docketbird on the

16  twitter page.  Cahill's conversation with "Mann" also proves

17  complicity.  The text sent on July 11, 2020 refers back to the

18  calls from "Mann" to Cahill and Cabo.  Attorney Greer, who at the

19  time was either directly representing Cahill as well or through

20  the joint defense arrangement, initially threatened to create

21  what became the website.

22      (b)  <u>Mann</u>:  Cahill's and Cabo's comments when he believed he

23  was speaking with Howard Mann, alone, show Mann's complicity.

24  The July 11, 2020 text refers back to the calls from "Mann" to

25  Cahill and Cabo.  The references to the Canadian patent and to

26  the text sender's mother are consistent with Mann.  The timing of

27  the pre-complaint email to Kashani and reference to Oren also

28

implicate Mann. Mann's employee emailed the Vivera investor in June 2020 saying something is coming involving Paul Edalat.

(c) <u>Blaine</u>: Blaine's lawyer Greer threatened what became the website and described it accurately to the extent of the list of lawsuits. Blaine left a recorded message with Max which resembled some of the anonymous texts and emails. The threat in person at the restaurant related to the Blaine litigation which indicates Blaine was the originator. The post-complaint email to Attorney Kashani, which are of the same type as prior emails described herein, demonstrably originated from Blaine or someone at Blaine Labs.

(d) <u>Cabo</u>: Cabo's comments when he believed he was speaking with Howard Mann show Cabo's complicity. Cabo also helped or attempted to help to add more defamation to the website concerning Gordon Malic.

120. Plaintiffs will add additional information based on discovery.

121. <u>Alter Ego Allegations</u>: Defendants Alternate Health Corp. and Alternate Health USA Inc. are instrumentalities of Howard Mann. Among other evidence, Mann diverted funds meant for AH to his own entities. Mann also took advantage of the corporate opportunity to sell stock by selling his mother's shares, secretly. Blaine Labs, in turn, is a wholly-owned subsidiary of AH and thus another instrumentality of Mann.

**FIRST CAUSE OF ACTION**

**COPYRIGHT INFRINGEMENT – 17 U.S.C. §§ 106 et seq.**

**(Direct, Contributory, Vicarious)**

**(By Paul Edalat (copyright holder) Against All Defendants)**

122. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 121 above, as if fully set forth herein.

123. Edalat is the sole owner and holder of the copyright that is fixed in tangible media of expression, namely the three Copyrighted Images (*see* Images A, B and C, above).

124. In 2016, Edalat first published the Copyrighted Images, and on November 11, 2020, the United States Copyright Office accepted an application of copyright registration for the original the Copyrighted Images by way of his registration on or about with the U.S. Copyright Office, registration number VA 2-223-704. As alleged above, on information and belief defendants wrongfully used, copied and converted the Copyrighted Images without the authorization, consent or approval of Edalat, and then posted and published the Copyrighted Images for their own use on their own website, *"pauledalatisgay.com,"* Twitter page *"Paul Pejman Edalat Barghi FAN PAGE,"* and YouTube page.

125. In particular, based on information and belief, beginning approximately on or about June 1, 2020, defendants were responsible for the registration and operation of the subject websites and accounts identified, herein which reflected and contained the Copyrighted Images.

126. Edalat, as creator and owner of the Copyrighted Images, was never asked for, nor granted, permission to the Defendants to unlawfully use the Copyrighted Images.  Nor would Edalat have ever grant such permission for the use employed by Defendants to defame and discredit Edalat and Vivera.

127.  On information and belief, defendants acted willfully in copying or otherwise using the Copyrighted Images, and Defendants willfully infringed the copyright.  Defendants, acting with knowledge and in concert, caused to be used on the websites described herein, the Copyrighted Images that were protected, duly registered and owned by Edalat without authorization.  Edalat did not authorize permit, or otherwise allow the use of the Copyrighted Images.

128. Defendants sought commercial advantage or personal gain from the infringing use of the Copyrighted Images.

129. The infringement has causes and is causing irreparable harm to Plaintiff Edalat for which he has no adequate remedy at law.  Unless this court restrains defendants from infringing Plaintiff's work, the harm will continue to occur in the future.  Accordingly, Plaintiff is entitled to preliminary and permanent injunction.

130. As remedies for the copyright violations alleged above, Plaintiffs respectfully request:  (1) injunctive relief against the Defendants pursuant to 17 U.S.C. § 502 against all present and to prevent future copyright related infringement; (2) actual damages and disgorgement of any profits for copyright infringement in accordance with 17 U.S.C. § 504(b);

(3) impoundment or proof of destruction of the infringing articles in each and any of the defendants' possession, in accordance with 17 U.S.C. § 503; and (4) costs and reasonable attorneys' fees in accordance with 17 U.S.C. § 505; prejudgment interest, and post judgment interest.

## SECOND CAUSE OF ACTION

### DEFAMATION

### (By All Plaintiffs against All Defendants)

131. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 130 above, as if fully set forth herein.

132. From May 2019 through and including the present, defendants (on information and belief) published defamatory statements against all plaintiffs in defendants' website, mailings, emails, texts, etc.  The defamatory statements are set forth in the preceding paragraphs.

133. On information and belief, defendants knew the statements were false and misleading at the time that the published such statements and they intentionally published them despite such knowledge.

134. The statements were not privileged.

135. These false and defamatory statements tended to harm and did harm Plaintiffs' reputation, lower their estimation in the community, lose business and investment opportunities and deter third-parties from dealing with Plaintiffs.

136. As a direct and proximate result of Defendants' conduct, plaintiffs have suffered presumed and actual damages,

including damage to their reputation, lost business
opportunities, lost financing opportunities, and attorneys' fees.

137. In addition, Defendants acted with fraud, malice and
with intent to damage plaintiffs, entitling Plaintiffs to an
award of punitive damages.

### THIRD CAUSE OF ACTION

### SLANDER

### (By All Plaintiffs against All Defendants)

138. Plaintiffs reallege and incorporate by reference the
allegations set forth in paragraphs 1 through 130 above, as if
fully set forth herein.

139. From May 2019 through and including the present,
defendants (on information and belief) published slanderous
statements against all plaintiffs in defendants' website,
mailings, emails, texts, etc.  The statements are set forth in
the preceding paragraphs.

140. On information and belief, defendants knew the
statements were false and misleading at the time that the
published such statements and they intentionally published them
despite such knowledge.

141. The statements were not privileged.

142. These slanderous statements tended to harm and did harm
Plaintiffs' reputation, lower their estimation in the community,
lose business and investment opportunities and deter third-
parties from dealing with Plaintiffs.

143. As a direct and proximate result of Defendants'
conduct, plaintiffs have suffered presumed and actual damages,

including damage to their reputation, lost business

opportunities, lost financing opportunities, and attorneys' fees.

144. In addition, Defendants acted with fraud, malice and

with intent to damage plaintiffs, entitling Plaintiffs to an

award of punitive damages.

### FOURTH CAUSE OF ACTION

### LIBEL

### (By All Plaintiffs against All Defendants)

145. Plaintiffs reallege and incorporate by reference the

allegations set forth in paragraphs 1 through 130 above, as if

fully set forth herein.

146. From May 2019 through and including the present,

defendants (on information and belief) published libelous

statements against all plaintiffs in defendants' website,

mailings, emails, texts, etc.  The statements are set forth in

the preceding paragraphs.

147. On information and belief, defendants knew the

statements were false and misleading at the time that the

published such statements and they intentionally published them

despite such knowledge.

148. The statements were not privileged.

149. These libelous statements tended to harm and did harm

Plaintiffs' reputation, lower their estimation in the community,

lose business and investment opportunities and deter third-

parties from dealing with Plaintiffs.

150. As a direct and proximate result of Defendants'

conduct, plaintiffs have suffered presumed and actual damages,

1  including damage to their reputation, lost business

2  opportunities, lost financing opportunities, and attorneys' fees.

3      151. In addition, Defendants acted with fraud, malice and

4  with intent to damage plaintiffs, entitling Plaintiffs to an

5  award of punitive damages.

6                    **FIFTH CAUSE OF ACTION**

7                     **UNFAIR COMPETITION**

8      **CAL. BUS. & PROF. CODE §§ 17200, *et seq.* and Common Law**

9        **(By Edalat, Barghi, and Vivera against All Defendants)**

10      152. Plaintiffs reallege and incorporate by reference the

11  allegations set forth in paragraphs 1 through 130 above, as if

12  fully set forth herein.

13      153. Section 17200 of the California Business and

14  Professions Code prohibits unfair competition, including "any

15  unlawful, unfair or fraudulent business act or practice…."

16      154. By engaging in the alleged conduct, Defendants have

17  engaged in unlawful, unfair or fraudulent business acts of unfair

18  competition in violation of Sections 17200, et seq. and

19  California Common law.  This conduct includes, but is not limited

20  to the following acts:

21        -Defendant's unauthorized use of Edalat's work;

22        -Bulk downloading images from Edalat's social media

23  and uploading the images onto their websites and their own

24  social media accounts to disparage Plaintiff in his business

25  or profession;

26        -Registering the domain names for the websites identified

27  in this Complaint and posting derogatory and profane content

28

thereon about Edalat, his attorneys, his family and his businesses, including Vivera, to damage Plaintiffs' reputation;

-Drafting fake quotes attributed to Edalat to portray him in a negative light, including quotes where it is made to appear the Plaintiff calls himself crude names;

-Sending emails to business associates and affiliates that falsely accused Plaintiffs of fraud and misconduct, including criminal misconduct;

-Sending anonymous letters to Edalat and his family threatening to "go after" them, and putting them in fear for their safety;

-Registering encrypted email addresses to send disparaging remarks and false accusations about Plaintiffs to Edalat's business associates and contacts to dissuade them from doing business with him;

-Repeatedly registering fake accounts in Edalat's and Vivera's name and posting content falsely making it appear Edalat was operating various accounts on dozens of social media platforms;

-Unlawfully gaining access to Vivera's employment files stored at Blaine Laboratories to obtain the contact information of Vivera's employees to continue the above described threats and harassment.

155. Plaintiffs have suffered actual injury in fact, and have lost money, property, business investments and business opportunities as a result of the unfair competition carried out

and/or caused by the Defendants, within the meaning of Cal. Bus. & Prof Code § 17204.

156. Defendants wrongly obtained benefits and gained competitive advantage over Plaintiffs by their unfair, fraudulent, and unlawful business acts and practices to the detriment of Plaintiffs.

157. As an actual and proximate result of Defendant's unfair competition, Defendants have unjustly enriched themselves by, among other things, obtaining profits, depriving Plaintiffs of the compensation to which they are rightly entitled, and taking credit for Plaintiffs' original work.  Plaintiffs are therefore entitled to restitution of such sums in an amount to be proven at trial.

158. Unless Defendants cease such unlawful action, unfair and fraudulent business acts and practices Plaintiffs will continue to suffer as a result of the egregious conduct.

159. Plaintiffs are entitled to specific and preventative relief to enforce the penalty and forfeiture of the benefits Defendants have derived from their unfair business practices, in accordance with Cal. Bus. & Prof Code § 17202.

160. Plaintiffs are entitled to seek injunctive relief against Defendants as they have engaged in unfair competition, within the meaning of Cal. Bus. & Prof Code § 17203.  This injunctive remedy would prevent continuing and future harm to Plaintiffs.

161. This Court is permitted to exercise such authority over the Defendants, irrespective of whether the Defendants and Plaintiff are considered "competitors" under the UCL.

### SIXTH CAUSE OF ACTION

**INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**

**(By All Plaintiffs Against All Defendants)**

162. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 130 above, as if fully set forth herein.

163. Plaintiffs had engendered numerous business relationships with third parties, namely institutional investors who were interested in advancing and participating in Vivera's multiple business divisions.

164. In particular, Vivera and its business partner, Burkhan Group, were in an economic relationship that would have resulted in an economic benefit to Vivera.

165. Defendants, and each of them, knew of the relationship between Vivera and Burkhan Group, as well as other institutional investors.

166. Defendants, and each of them, knowingly and willfully engaged in the smear campaign of defamation and pattern of harassing and defamatory conduct as alleged herein.

167. By engaging in this conduct, Defendants, and each of them, intended to disrupt the relationship and/or knew that disruption of the relationship between Plaintiffs and Burkhan Group as well as other institutional investors was certain or substantially certain to occur.

168. As a result of Defendants' conduct, including the publication of the subject websites and rampant defamation across various social media accounts and online platforms, Plaintiffs lost business relations and opportunities with investors.  The relationship between Plaintiffs and Burkhan Group, as well as other institutional investors was disrupted and Plaintiffs were harmed.

169. Defendants' conduct was a substantial factor in causing Plaintiffs' harm and damages in an amount in excess of $25,000,000.  Defendants' defamation, slander and libel also contributed to and caused this harm.

### SEVENTH CAUSE OF ACTION

#### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**(By Plaintiffs Darnell, Hannley, Draghici, Edalat, and Barghi against All Defendants)**

170. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 130 above, as if fully set forth herein.

171. Defendants intentional and / or reckless campaign of defamatory and harassing conduct against Plaintiffs as published on their websites and social media accounts and intentional and / or reckless use of Plaintiff Edalat's copyrighted works, as judged by a reasonable person standard, are beyond the bounds of decency and is therefore extreme and outrageous conduct.

172. Defendants' conduct was outrageous and was clearly carried out with the intent to harass and cause emotional distress to Plaintiffs especially Farah Barghi and Paul Edalat,

especially by threatening their mother.

173. When those attempted attacks proved unsuccessful, Defendants would expand their efforts and redirect their attacks to the other Plaintiffs—specifically, Barghi, Hannley and Darnell.

174. As a direct and proximate result of Defendants' conduct alleged herein, Plaintiffs, have suffered general and special damages including without limitation, harm to Plaintiffs' reputation, emotional distress, expense incurred in defense and repair of their reputations and business relations, lost earnings, and other pecuniary loss.

175. Based on information and belief, in engaging in the conduct alleged herein, Defendants acted with the intent to injure, vex, annoy and harass Plaintiffs subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs rights and intentionally misrepresented and concealed material facts known to Defendants with the intention on the part of Defendants of thereby depriving Plaintiffs of their legal rights and otherwise cause Plaintiffs injury.

176. As a result of the foregoing, Plaintiffs are entitled to exemplary and punitive damages against Defendants.

**<u>EIGHTH CAUSE OF ACTION</u>**

**CIVIL EXTORTION**

**(By Plaintiffs Vivera, Edalat and Barghi against All Defendants)**

177. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 130 above, as if fully set forth herein.

178. As alleged above, many of the statements threatened plaintiffs if they did not, for example, drop certain litigation or "settle".  These statements were intended to extort concessions from plaintiffs on threat of bodily harm or exposing plaintiffs to a disgrace.

179. These statements were not privileged.

180. On information and belief, defendants made the statements and thus are liable for extortion.

181. Defendants' conduct was outrageous and despicable, and merits punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray as follows:

A.   For damages according to proof including presumed damages for extortion, defamation, libel and slander.

B.   For punitive damages.

C.   For a preliminary and permanent injunction to take down the websites and pages and prevent further mailings, emails and texts by defendants.

D.   For the imposition of all damages jointly and severally on all defendants based on civil conspiracy.

E.   Costs and attorney fees to the extent allowed by law, including under Section 505 of the Copyright Act.

F.   For such and further relief as this Court deems proper.

DATED:  May 28, 2021

                              /s/ Saied Kashani
                              Saied Kashani
                              Attorney for Plaintiffs
                              RICK DARNELL, GREGORY HANNLEY,
                              ALEX DRAGHICI, VIVERA

```
PHARMACEUTICALS INC., PAUL EDALAT,
and FARAH BARGHI
```

JURY DEMAND

Plaintiffs demand trial by jury on all matters triable to a jury in this case.

DATED:  May 28, 2021

<u>/s/ Saied Kashani</u>
Saied Kashani
Attorney for Plaintiffs
RICK DARNELL, GREGORY HANNLEY,
ALEX DRAGHICI, VIVERA
PHARMACEUTICALS INC., PAUL EDALAT,
and FARAH BARGHI

PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. On May 28, 2021, I served the following documents:

**FIRST AMENDED COMPLAINT**

 X    electronically

| | |
|---|---|
| George S. Burns<br>Burns & Moss<br>620 Newport Center Dr Ste 600<br>Newport Beach, CA 92660<br>george@burnsandmosslaw.com | Attorneys for Federico Cabo |
| John Markham<br>Markham Read Zerner LLC<br>One Commercial Wharf West<br>Boston, MA  02110<br>jmarkham@markhamreadzerner.com | Attorneys for Alternate Health Corp., Alternate Health USA and Howard Mann |
| C. Keith Greer<br>16855 W. Bernardo Dr. Ste 255<br>San Diego, CA  92127<br>keith.greer@greerlaw.biz | Attorneys for Robert Blaine, Blaine Labs and Bruce Cahill |

 _    By mail:  I deposited the envelope, with postage thereon, into the United States mails at Los Angeles, California.

 x    Executed on **May 28, 2021, a**t Los Angeles, California.

 x    I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Sean Hass